# Supreme Court Decisions.

### DISCRETION AND PRUDENCE ON PART OF SERVANT.

## THE NORTHERN OHIO RAILWAY CO. v. RIGBY.

### 69 Ohio State—Decided November 17, 1903.

*Special Charge to Jury on Dispnted Facts—Properly Refused, When—Explosion of Car Heater in Railway Coach—Employe Injured—Explosion Resulted from Act Done by Direction of Foreman—Superior Directs Inferior to Perform Duty—Discretion of Inferior as to Method of Performance—Question of Prudence on Part of Inferior—Contributory Negligence —Law of Master and Servant.*

1. A special charge to the jury requested by a party to an action, which is based on the assumption that a material fact exists in the case, but which fact is in dispute between the parties, is properly refused.

2. In the trial of an action brought by an employe, against a railway company, to recover for injuries sustained by the explosion of a car heater on a passenger coach, while he was attempting to thaw out the frozen water pipes, while the car was standing in the yards of the company; and where the evidence tends to prove that the heater was without a steam gauge to the knowledge of the employe, and that the explosion was caused by the use of a solid plug in the drum of the heater instead of a safety valve, which plug was put in by the employe a few days before the explosion by direction of his superior; and where the evidence further tends to prove that the employe was an experienced foreman of car repairers, and familiar with the system of heating used on said car, and with the proper method and means of thawing out the water pipes when frozen; and where the only order from his superior was a telegram to get the car ready for use; to charge the jury without further explanation that "If you find at the time of the explosion and for several days prior thereto, there was no safety valve in the drum of the Baker heater in car 22; that said safety valve had been removed and replaced by a solid plug, and that Rigby knew of these facts when he attempted to thaw out said heater at the time of the explosion complained of; and further, if you ·find that said explosion resulted wholly from the fact that said drum had a solid plug instead of a safety valve, then Rigby would nevertheless be entitled to recover in this action if you find by a preponderance of the evidence that in attempting to thaw out said heater, as he did, he was acting in

obedience to a positive order of his superior, that a person of ordinary prudence would, under the circumstances, have obeyed such order, and that in obeying such order he used ordinary care," is misleading and erroneous.

3. Where the superior, while absent, sends an order to an employe to perform certain work or duty, but leaves to such employe the selection of the means and manner of performing the service, the doctrine of *The Van Duzen Gas & Gasoline Co.* v. *Schelies*, 61 Ohio St., 298, does not apply.

Error to the Circuit Court of Summit County.

On or about the fourth day of December, 1895, the defendant in error was severely injured in the yards of the plaintiff in error at Delphos, Ohio, by the explosion of what is commonly known as the Baker car heater, which was in passenger coach No. 22, owned and operated by the railway company.

The plaintiff below was an employ of the plaintiff in error, as he alleges, in the capacity of foreman of car repairers at the shop of the company, on its line of railroad at Delphos, and that his duty was to make and cause to be made such repairs of the cars of the defendant, as he might be ordered to make from time to time.

The evidence tends to prove that Rigby, plaintiff below, had several years' experience as foreman of car repairers on the line of defendant company, and other railroads, before engaging with the defendant, and that he also had considerable knowledge of and experience with the Baker car heater, and as a mechanic, possessed a fair knowledge of its construction and mode of operation. The evidence further tends to show that in the discharge of his duties he had experience as to the proper method of thawing out the pipes of this system of heating cars, when the water circulating therein from the heater had become frozen. This heating system when in proper condition was furnished not only with a pressure guage but also a safety or pop valve. The safety or pop valve is connected with the drum of the heater on the roof of the car, and its purpose is to furnish relief from excessive pressure.

There is evidence tending to prove, and it is not seriously in dispute, that on or about November 25th, preceding the explosion, and while this car No. 22 was standing in the Delphos yards, Rigby was directed to get it ready to go out upon the road, and it was found that the drum of the heater was without the safety or pop valve. The master mechanic, Marshall, was informed of this fact, and after some discussion,

Rigby was told by the master mechanic to put in a plug where the safety valve should be, until valves which had been ordered, should arrive. This was done by Rigby, and a solid plug was put in the vent of the drum. The heater was then filled with water and fired up ready for the road. It turned out that the car was not needed at once, and the fire was drawn from the heater. The car then stood for several days out of doors in the open yard, in severe cold weather, and such water as remained in the pipes froze.

On the day of the explosion, December 4th, it became necessary to get car No. 22 ready for use on the road the next morning. The evidence showed that Marshall, as master mechanic, telegraphed to Rigby, "Get car 22 ready."

In pursuance of this direction or order, Rigby set about to thaw out the pipes, while the pressure guage was absent and the plug was in the vent of the drum, instead of a safety or pop valve; and in so doing the explosion occurred, and he was seriously injured.

The negligence complained of in the plaintiff's petition, in substance, consists in the company failing to furnish the safety or pop valve as its master mechanic had promised should be put in, and ordering plaintiff to proceed with the plug in, which, with the weak and defective condition of the heater, caused the explosion and his injuries.

The answer of the company denies any defective or weakened condition of the heater, and all negligence on its part, and charges that the plaintiff had full knowledge of the danger of attempting to thaw out the pipes without a safety valve, and negligently proceeded with the work under the circumstances, well knowing the dangers to be encountered, and thus contributed to his injuries.

The defendant company requested the court to give the jury certain instructions, some of which were substantially embraced in the general charge, and others were given in the language requested. The seventh request was not so given, and for this, error is assigned. The request is as follows:

"7. If you find from the evidence that the talk between Marshall and Rigby about putting in the plug in the heater was merely determining the best mode of putting the same in condition for use until the 'pop valves' came, they having equal knowledge of the defect, and the safety of using the same in that condition; and that Marshall telegraphed Rigby to get car No. 22 ready for use; and under Marshall's order Rigby

went ahead and used the heaters, assuming all the direction as to its use in that condition, the mode of building the fire, and thawing out of the pipes, and had sole charge of the work, then I say to you that the doctrine of promise to repair defective machinery would not apply to him. Under such a state of facts, and in that case, he should be held to assume the risk of the use of such defective heater, and he can not recover in this case.

"The promise to repair the defective heater, claimed in this case, must have been made for the benefit of the plaintiff, and to induce him to continue work, and not simply in the interest of the defendant. And if you find from the evidence that it was merely a talk between Marshall and Rigby as to the best way to prepare the car for use, to put a plug in until the 'pop valves' came, both having equal knowledge of the safety and its use, and was not intended for an order to Rigby to use it against his judgment, then I say to you that the doctrine of promise to repair defective machinery and continued use by an employe does not apply, and Rigby would be held to assume the risk of the use of the heater in such condition, and he can not under such circumstances recover in this case."

Exception was taken to the refusal to give this instruction, as well as to others not given. After argument the court charged the jury, and special and general exceptions were taken. The jury found for the plaintiff. Defendant's motion for new trial was overruled, and judgment entered on the verdict, which was affirmed by the circuit court, and error is prosecuted here to reverse the judgment of both courts.

The questions raised on the general charge are stated in the opinion.

*Tibbals & Frank,* for plaintiff in error.

*E. F. Voris* and *Charles Baird,* · for defendant in error.

PRICE, J.; BURKET, C. J., SPEAR, DAVIS, SHAUCK and CREW, JJ., concur.

It is disclosed by the record that this case has been thrice tried to a jury, each trial resulting in a verdict and judgment for the plaintiff. The judgments rendered on the first and second verdicts were reversed by the circuit court, but it affirmed the last judgment, and we have the controversies of the last trial before us on the petition in error and a bill of exceptions, which contains all the evidence and the numerous questions of law which arose during the trial.

The assignments of error are many, and they have received our careful consideration. We discover no substantial error

in the admission or exclusion of evidence, and all proper instructions asked by the railway company were either given in terms, or in substance in the general charge. They were not asked to be given before argument to the jury commenced, and therefore no legal right of plaintiff in error in that respect has been violated.

Defendant's special instructions four and seven were not given as requested, nor can it be said that their substance is embraced in the general charge. But the omission is not error, because the principle sought to be impressed by each request seems to be predicated upon the assumption of an important fact which was in dispute between the parties. This prominently appears in request seven, found in the statement of this case. It opened as follows:

"If you find from the evidence that the talk between Marshall (the master mechanic) and Rigby about putting in the plug in the heater was merely determining the best mode of putting same in condition for use until the 'pop valves' came, *they having equal knowlege of the defect, and the safety of using the same in that condition;* and that Marshall telegraphed Rigby to get car No. 22 ready for use; and under Marshall's order Rigby went ahead and used the heaters, *assuming all the directions as to its use in that condition,* the mode of building the fire, and thawing out of the pipes, and had sole charge of the work, then I say to you that the doctrine of promise to repair defective machinery would not apply to him."

The railway company introduced evidence tending to prove that Rigby had skill and knowledge concerning the system of heating equal and even superior to that of Marshall, the master mechanic, and that he was able to act, and in this case, did act, on his own knowledge, skill and judgment. However, the plaintiff denied this, and asserts that his knowledge and skill are inferior, and that he relied on the judgment and directions of Marshall. Hence, it would have been error for the court to assume that they had equal knowledge on the subject, and on that assumption base an instruction calculated to materially affect the verdict.

We now come to the general charge of the court. To this charge counsel for the railway company have devoted much criticism, and urge that the law applicable to the issues and facts of the case was not given the jury, and that improper rules were submitted for its consideration bearing on the risks assumed by Rigby, the duties of the railway company touching

the same subject, the charge of contributory negligence made in its answer, and the promise of the superior to the employe to replace the plug with a safety valve.

We are of the opinion, however, that the charge does not justly deserve all that has been said about it; and if the court had left it with the jury when it seems to have reached a proper close, we could find no sufficient reason for a reversal of the judgment. But the court did not stop where the charge properly ended. This language follows:

"Now, gentlemen, this case has occupied a number of days and the evidence covers a wide field of inquiry, and, as you see from the somewhat lengthy instruction I have given you, that numerous questions of law arise. I have endeavored to give you them as clearly as I possibly could, but in view of their length, it is possible that men not familiar with the examination of legal questions might not readily apprehend them; therefore, in connection I will summarize what I have thus said, and make it as near as I can applicable to the particular case before you."

The summary was made, and after being introduced by the foregoing language, it would be quite natural for the jury to lose sight of much that had been said during the progress of the long charge, and look to the attempted summing up of the whole matter within a much smaller compass, and which it would more readily grasp and remember. If the summary was free from fault this would be well. On the other hand, if it embraces the virus of serious error the same became the more conspicuous and controlling with the jury. Less than two pages of the printed record contain the summary, of which we find the following on page 531:

"If you find at the time of the explosion and for several days prior thereto, there was no safety valve in the drum of the Baker heater in car 22; that said safety valve had been removed and replaced by a solid plug, and that Rigby knew of these facts when he attempted to thaw out said heater at the time of the explosion complained of; and, further, if you find that the said explosion resulted wholly from the fact that said drum had a solid plug instead of a safety valve, then Rigby would, nevertheless, be entitled to recover in this action, if you find by a preponderance of the evidence either, that in attempting to thaw out said heater, as he did, he was acting in obedience to a positive order of his superior, that a person of ordinary prudence would, under the circumstances, have obeyed such order, and that in obeying such order he used ordinary care; or, that Rigby informed his superior of the want of a safety valve in said drum and that said superior ordered

him to put in a solid plug and to use said drum with a solid plug, and then promised Rigby to have said solid plug promptly replaced by a proper safety valve, and that Rigby, in reliance upon such promise, continued in the employ of The Northern Ohio Railway Co., and that a reasonable time to replace said plug had not elapsed between said promise and said explosion, and that in getting said car 22 ready for the road at the time of the explosion he used reasonable and ordinary care; unless you find that no ordinary prudent man would, under all the circumstances have continued in such employment and obeyed such order."

To say the least of this paragraph, it is very much involved, and if there was any confusion in the preceding instructions, it became worse confounded in this summary. The jury was told that if there had been no safety valve in the drum of the heater for several days, that it had been removed and replaced by a solid plug, of which facts Rigby had knowledge when he attempted to thaw out the heaters, and if the explosion resulted wholly from the fact that the drum had a solid plug instead of a safety valve, "then Rigby would nevertheless be entitled to recover," if the jury should find from a preponderance of the evidence either, that in attempting to thaw out the heater, he was acting in obedience to a *positive* order of his superior, which a prudent person, under the circumstances would have obeyed; or, that if the jury find that Rigby had informed his superior of the want of a safety valve, who informed him to put in a solid plug and so use the heater until the plug could be replaced by a safety valve, and Rigby relied on the promise and continued in the employ of the railway company, and a reasonable time in which to replace the safety valve had not elapsed at the time of the explosion, provided he used ordinary care; unless the jury found that no ordinarily prudent man would have continued in the service and obeyed such order.

We have endeavored to analyze this paragraph, and place the component parts in such juxtaposition with each other, as to convey a clear meaning, but without success. It starts abruptly and as it is unfolded it becomes more complex. The premises for the principle inculcated are laid after its assertion, and the paragraph ends with a qualification which reflects no light on what precedes it.

The evidence at least tends to prove that Rigby had taken the safety valve from car 22 and put it on the drum of the heater of another car, and this too, several days prior to the

explosion. True, it was done after consultation with Marshall, and by his directions. Another fact which the evidence tends to prove, is that there was no steam pressure guage on the heater of car 22, and had not been for several days, which fact was well known to Rigby. The evidence further tends to prove that Rigby, besides the knowledge of this condition of the heater, possessed large experience as foreman of car repairers, and also had considerable experience with the Baker system of heating and the method of thawing out the pipes when frozen.

Such being the state of evidence, the court, in its summary, in effect says, that although Rigby knew of the absence of the valve, he might "nevertheless recover, if he was acting in obedience to a positive order of his superior," where a person of ordinary care would have obeyed such order. The order relied on as inducing Rigby's conduct on the day of the explosion, came by wire from Marshall—"Get car 22 ready." We are not directed to any other order, and we discover none other in the record. It seems to be conceded that such was at least the substance of the order. The court speaks of this as a *positive* order, obedience to which enters into one of the conditions of recovery. It may be a positive order to get the car ready, but it is silent as to the means to be used in that behalf. It prescribes no means or method, and it may be quite true that Marshall, at the time the message was sent, was not aware that the pipes were frozen. The order may have implied thawing out of the pipes, if necessary to get the car ready, but Rigby was left to use his own judgment as to the manner of performing the duty.

The natural tendency of the instruction was, that the order to get the car ready, implied the use of the means which Rigby adopted in thawing out the pipes. To prevent such misunderstanding on the part of the jury, the court should have been more explicit on the vital and perhaps turning point in the case.

The balance of the paragraph stating the other condition of recovery is equally unfortunate in its language, and we think as a whole it is erroneous and misleading.

Without further comment we very reluctantly conclude that for this error the judgment must be reversed, and the cause remanded for another trial.

*Judgment reversed.*